**In re Kenneth W. PERKINS and Deborah W. Perkins, Debtors.**

No. 388–05686.

United States Bankruptcy Court, M.D. Tennessee.

March 12, 1990.

Arthur K. Lowen, Nashville, Tenn., for debtors.

Suzanne Mossman, Nashville, Tenn., for trustee.

## MEMORANDUM

KEITH M. LUNDIN, Bankruptcy Judge.

The question presented is whether the post-confirmation conversion into cash of a revealed asset warrants modification of a Chapter 13 plan over the debtor's objection to require payment of the cash to creditors. Because the proposed modified plan fails the feasibility test in 11 U.S.C. § 1325(a)(6), modification is denied.

### I.

On September 1, 1988, Kenneth and Deborah Perkins filed a Chapter 13 petition. A divorce decree, dated March 18, 1982, gave Kenneth Perkins an interest in his former residence. Under the decree, the debtor's former wife owned the house and was not required to sell it; but, in the event of sale, this debtor was entitled to one-half of the net proceeds. The debtor revealed this expectancy as an asset in the Chapter 13 Statement. He valued his interest at $12,300.

A plan was confirmed on November 8, 1988. The plan provided a 100% dividend to unsecured claimholders over 60 months. The only objection raised by the trustee concerned the treatment of a secured claim. No unsecured claimholder objected to confirmation.

On April 28, 1989, the trustee received a check in the amount of $12,343 representing the debtor's share of the proceeds from the sale of the house. On May 18, 1989, the trustee moved to modify the plan, to require the debtor to pay the $12,343 to claimholders. The trustee contends that the sale proceeds are property of the estate under 11 U.S.C. § 541(a)(5) and § 1306(a)(1), constitute disposable income under § 1325(b) and thus must be committed to funding the plan. The trustee's proposed modification would shorten the duration of the plan by approximately five months. The debtor responds that the doctrine of *res judicata* and the effect of confirmation under § 1327 bar the trustee's proposed modification because there has been no substantial or unanticipated improvement in the debtor's financial condition.

### II.

11 U.S.C. § 1327 states that "[t]he provisions of a confirmed plan bind the debtor and each creditor...." Section 1329(a), however, allows modification of a confirmed plan "upon request of the debtor, the trustee, or the holder of an allowed unsecured claim...." This court reconciled the binding effect of confirmation under § 1327 with modification after confirmation under § 1329 in *In re Jock*, 95 B.R. 75, 77 (Bankr.M.D.Tenn.1989):

11 U.S.C.S. §§ 1329(b) and (c) fix the statutory limits on modifications of Chapter 13 plans after confirmation. The mandatory and permissive provisions of a Chapter 13 plan found in 11 U.S.C.S. §§ 1322(a) and (b) (1987) and the confirmation requirements of 11 U.S.C.S. § 1325(a) (1987) "apply to any modification under subsection (a) of this section." 11 U.S.C.S. § 1329(b)(1). A Chapter 13 debtor can use the permitted plan provisions described in § 1322(b), subject to the confirmation requirements of § 1325(a), to modify a confirmed Chapter 13 plan under § 1329(a).

\* \* \* \* \* \*

Section 1327(a) is not a limit on permitted modification of a confirmed Chapter 13 plan; rather, it is a statutory description of the effect of a confirmed plan or of a confirmed modified plan. A confirmed Chapter 13 plan binds the debtor (and all creditors), 11 U.S.C.S. § 1327(a), but a confirmed plan "may be modified ... at any time after confirmation of the plan but before completion of payments under the plan...." 11 U.S.C.S. § 1329(a). The confirmed plan binds the debtor unless and until it is modified, and then the modified plan "becomes the plan," 11 U.S.C.S. § 1329(b)(2), and the modified plan has the effects described in § 1327. Sections 1322(a), (b), 1323(c) and 1325(a) are the appropriate sources of the limits on modification under § 1329. *See* 11 U.S.C.S. § 1329(b).

The debtor cites no provision of §§ 1322, 1323 or 1325 in opposition to the trustee's proposed modification of the plan. In fact, it is difficult to articulate opposition by a debtor to confirmation of a proposed modification in terms of the standards for confirmation of a (modified) plan cited above. Section 1325(a) and the other tests for confirmation applicable at modification under § 1329(b) were not constructed with an objection to confirmation by the *debtor* in mind.

The possibility that someone other than the debtor would be the proponent of a modified Chapter 13 plan and that the debtor might be cast in the role of objecting to confirmation did not arise until 1984 when Congress amended § 1329(a) to permit the trustee and allowed unsecured claimholders to seek modification after confirmation. Pub.L. No. 98–353, Title III, Subtitle A, § 319, 98 Stat. 357 (1984). Prior to the 1984 amendments only the debtor had standing to propose the original plan or any post-confirmation modification. *Fietz v. Great Western Savs. (In re Fietz)*, 852 F.2d 455 (9th Cir.1988); *In re Fluharty*, 23 B.R. 426, 9 BANKR.CT.DEC. (CRR) 828 (Bankr.N.D.Ohio 1982); *In re Boone*, 53 B.R. 78 (Bankr.E.D.Va.1985); *In re Mosley*, 74 B.R. 791, 16 BANKR.CT.DEC. (CRR) 331 (Bankr.C.D.Cal.1987). *Contra In re Koonce*, 54 B.R. 643 (Bankr.D.S.C.1985).

■ Several courts have reached outside of the Code for a standard against which to assess the propriety of a creditor- or trustee-driven modification. Relying on legislative history, some courts have held that the non-debtor proponent of a modified plan must prove that the debtor has experienced a "change in circumstances" after confirmation of the original plan, else the original plan remains binding under § 1327. *In re Moseley*, 74 B.R. 791, 16 BANKR.CT. DEC. (CRR) 331 (Bankr.C.D.Cal.1987). Other courts have concluded that the change in circumstances must be "substantial" to justify post-confirmation modification. *In re Euerle*, 70 B.R. 72 (Bankr.D.N. H.1987); *In re Gronski*, 86 B.R. 428 (Bankr.E.D.Pa.1988). Still other courts demand proof of "unanticipated, substantial

changed circumstances." *In re Fitak*, 92 B.R. 243 (Bankr.S.D.Ohio 1988); *Arnold v. Weast (In re Arnold)*, 869 F.2d 240 (4th Cir.1989). Some courts have applied the same changed circumstances test to post-confirmation modifications offered by debtors. *In re McCollum*, 76 B.R. 797, 16 BANKR.CT.DEC. (CRR) 388 (Bankr.D.Or. 1987); *In re DeMoss*, 59 B.R. 90, 14 BANKR.CT.DEC. (CRR) 300 (Bankr.W.D. La.1986). Other courts have required one measure of changed circumstances from the debtor and a different quantum from creditors. *In re Gronski*, 86 B.R. 428 (Bankr.E.D.Pa.1988); *In re Jourdan*, 108 B.R. 1020 (Bankr.N.D.Iowa 1989).

This resort to legislative history for standards external to the Code is seductive but the effort should first be made to accommodate §§ 1329(a) and 1329(b)(1) as written. Though somewhat awkward in concept and application, the language of these sections of the Code is plain and unambiguous. *See U.S. v. Ron Pair Enterprises*, — U.S. —, —, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290, 298 (1989). Section 1329(b)(1) fully circumscribes the standards for confirmation of a plan modification offered by an allowed unsecured claimholder or the trustee. The proponent of modification must satisfy the tests in "Sections 1322(a), 1322(b), . . . 1323(c) . . . and the requirements of section 1325(a) . . ." 11 U.S.C. § 1329(b)(1). Changed circumstances or unanticipated events after confirmation of the original plan may be evidence relevant to one or more of the listed standards. Changed circumstances, unanticipated or otherwise, is not imposed by the Code as a threshold barrier to access to modification under § 1329.

■ Here, the trustee's proposed modification fails the feasibility test for confirmation in 11 U.S.C. § 1325(a)(6): ". . . the debtor will be able to make all payments under the plan and to comply with the plan." If confirmed, the proposed modified plan would require the debtors to pay all of the $12,343 from the sale of the house to the trustee for distribution to claimholders. It is stipulated that the debtors will have income tax liability in connection with the

sale of approximately $3,800. The trustee's proposed modification makes no provision for payment of these taxes and there is no evidence of any other source of money to pay taxes—it is stipulated that the debtor's expenses have increased due to an increase in an adjustable rate mortgage, but there has been no change in the debtor's income since confirmation of the original plan. There is evidence that Kenneth Perkins is obligated to pay college expenses pursuant to the 1982 divorce decree that have arisen postconfirmation upon his son's decision to attend college, that the debtors' home needs repairs and that the debtors need to replace a car. There are no provisions in the trustee's proposed modification of the plan to manage these postconfirmation changes in the debtors' budget. The proposed modification could not be performed by the debtors on these facts.

Because the trustee's proposed plan modification fails the test for confirmation in § 1325(a)(6), it is not necessary to reach the parties' arguments whether the conversion to cash of a revealed asset after confirmation generates "disposable income" or whether the "projected disposable income test" in § 1325(b) applies at confirmation of a modified plan.