**In re Nguyen Hong THAN, Debtor.**

**MAX RECOVERY, INC., Appellant,**

**v.**

**Nguyen Hong THAN; Duncan H. Kester, Chapter 13 Trustee; United States Trustee, Appellees.**

**BAP No. NC–96–1782–ORYR.**
**Bankruptcy No. 94–55036 JRG.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted July 22, 1997.

Decided Oct. 24, 1997.

Amended Opinion Filed Nov. 25, 1997.

Sblend A. Sblendorio, Levy, Greenfield & Davidoff, L.L.P., San Jose, CA, for Appellant.

David A. Boone, Law Offices of David A. Boone, San Jose, CA, for Appellee.

Before: OLLASON, RYAN and RUSSELL, Bankruptcy Judges.

### AMENDED OPINION

OLLASON, Bankruptcy Judge.

### OVERVIEW

Max Recovery, Inc. ("Appellant") is a collection agency and postconfirmation assignee of unsecured creditors' claims in Nguyen Hong Than's ("Than") Chapter 13 bankrupt-

cy case.[1] No creditor opposed confirmation of Than's percentage plan. When fewer claims than anticipated were filed, the Chapter 13 trustee noticed interested parties that Than's plan would be completed in 32 months instead of the original estimate of 38 months. Appellant sought to increase the plan duration to at least 36 months, thus requiring a larger payout to the unsecured creditors. The bankruptcy court denied the motion, concluding that the Code did not require a disposable income analysis including plan length as a factor for modification. Although we agree with the bankruptcy court's legal conclusion as applied to these facts, we VACATE and REMAND to allow the court to consider the subsequently decided case of *In re Powers,* 202 B.R. 618 (9th Cir. BAP 1996).

## STATEMENT OF FACTS

Than filed his Chapter 13 bankruptcy petition on August 2, 1994. His schedules listed unsecured, nonpriority claims totaling $84,093.17. Two of the allowed unsecured claims were those of Chemical Bank and Bank of America.

 Than's Chapter 13 plan provided for monthly payments of $300 "for 38 months or until all allowed claims are paid." The plan provided that unsecured claims would receive 11% on the dollar. Thus, it was a "percentage plan."[2]

The plan did not contain a "best efforts" or "disposable income" provision stating that all of Debtor's projected disposable income calculated for at least 36 months would be applied to the plan payments. Such provision is required following an objection to plan confirmation by § 1325(b):

(b) (1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

(a) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

11 U.S.C. § 1325.

Than's plan was confirmed on October 17, 1994, without objection by any creditor. The trustee, however, objected to confirmation because Than failed to provide certain information on his income. The objection was resolved and did not trigger § 1325(b)(1).[3]

The bar date for filing proofs of claim was January 1, 1995, about 75 days after plan confirmation. On February 22, 1995, the Chapter 13 trustee filed a motion which indicated that the allowed claims that were filed totaled only $73,065.85 instead of the anticipated $84,093.17. Thirteen percent of the anticipated claims, representing $11,037.32, were not filed. As a result of the reduction, the trustee stated that the plan would pay the 11% to the unsecured creditors in 32 months instead of 38.

On September 22, 1995 and October 24, 1995, respectively, Appellant filed notices of

---

1. Unless otherwise indicated, references to "Chapter," "Section/ § ," or "Code" are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330.

2. A percentage plan provides that each creditor will receive a set percentage of the allowed claim while leaving the exact amount the debtor will pay in flux until all claims are approved. If fewer than anticipated claims are filed, the debtor could retain a portion of the disposable income. A pot plan provides that the debtor will pay a fixed amount, thus the percentage creditors receive will depend on the total amount of

approved claims. *In re Witkowski,* 16 F.3d 739, 741 & n. 11 (7th Cir.1994).

3. Neither party has elaborated on the nature of the trustee's objection. Appellant, in particular, has not argued that the trustee's objection was "pursuant to § 1325(b)(1)." *See* 8 COLLIER ON BANKRUPTCY § 1325.08[4](a), at 1325–49 (15th ed.1997). The Panel assumes the objection was merely technical and unrelated to § 1325(b)(1), and declines to address the matter. *In re Yarbrow,* 150 B.R. 233, 237 (9th Cir. BAP 1993) (appellate court may decline to consider an argument when the necessary record is not before it).

assignment to it of the Chemical Bank and Bank of America claims.[4]

On November 17, 1995, nine months after the trustee's motion, and a year after plan confirmation, Appellant filed a motion to modify the Chapter 13 plan to increase the plan length to not less than 36 months. This modification, purportedly, would change the percentage plan to a "pot" plan and increase the payout to the unsecured creditors.[5]

Appellant contended that it need not show a change in the debtor's financial condition to justify modification. Appellant cited *In re Witkowski*, 16 F.3d 739 (7th Cir.1994), for a more lenient standard for modification, and alleged that the standard was satisfied by the failure of some creditors to file claims, which affected Debtor's ability to pay. *See id.* at 743–44.

Than opposed the motion. He argued that: (1) Appellant lacked standing and had not proven its status as a creditor; (2) Appellant was prevented from objecting to the plan by *res judicata* or laches; (3) Appellant's motion to modify was brought in bad faith to harass him; (4) the bankruptcy court was not entitled to conduct a disposable income or best efforts test for modification purposes; (5) the "unanticipated and substantial change" test for modification applied and was not met in this case; and (6) in any event, his financial circumstances had changed so that he could not afford to pay out a higher percentage, so modification should be denied.

Following a hearing, the bankruptcy court entered its order denying the motion on June 6, 1996. At the hearing, the bankruptcy court assumed, without reaching the issue, that Appellant had standing. The court held that § 1325(b) did not apply in the modification proceeding; thus, plan length was not a factor for determining modification of the confirmed percentage plan. Without further

analysis, the court held that no grounds existed for modification.

## ISSUES

1. Whether Appellant has standing.

2. Whether Appellant's motion to modify was barred by the doctrines of *res judicata* or laches.

3. Whether the bankruptcy court abused its discretion by finding no grounds to modify Than's plan.

4. Whether the disposable income test of § 1325(b)(1) applied to the modified plan where Appellant was the proponent and Than was the only objecting party.

## STANDARD OF REVIEW

Standing is a question of law reviewed *de novo*. *Sahni v. Am. Diversified Partners*, 83 F.3d 1054, 1057 (9th Cir.1996), *cert. denied*, — U.S. ——, 117 S.Ct. 765, 136 L.Ed.2d 712 (1997). The applicability of *res judicata* is a legal question, reviewed *de novo*. *Robi v. Five Platters, Inc.*, 838 F.2d 318, 321 (9th Cir.1988). We review the bankruptcy court's interpretation of the Code *de novo*. *In re Harrell*, 73 F.3d 218, 219 (9th Cir.1996).

Modification under § 1329 is discretionary; therefore, the Panel reviews the bankruptcy court's refusal to confirm a modified plan for an abuse of discretion. *Powers*, 202 B.R. at 620. Under the abuse of discretion standard, the Panel will not reverse unless it has a definite and firm conviction that the bankruptcy court committed a clear error of judgment in the conclusion it reached upon weighing the relevant factors. *United States v. Plainbull*, 957 F.2d 724, 725 (9th Cir.1992).

## DISCUSSION

Modification of a confirmed Chapter 13 plan is governed by § 1329, which provides, in pertinent part:

---

**4.** These notices are not in the record; this fact is taken from the bankruptcy court's Statement of Decision.

**5.** Than asserts that the appeal is moot because attorney's fees of approximately $1,000 will require the plan to last at least 35 months. At oral argument, the parties conceded that attorney's fees would cause an extension of the plan. However, Appellant contended that those months should be added to the 36 months. Because the additional months needed to pay the attorney's fees do not resolve the alleged injury to Appellant—*i.e.*, do not increase the payout to unsecured creditors—we do not find that the appeal is moot.

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time for such payments; or

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan, to the extent necessary to take account of any payment of such claim other than under the plan.

11 U.S.C. § 1329.

■ Modification is essentially a new plan confirmation and must be consistent with the statutory requirements for confirmation. *Powers*, 202 B.R. at 623 (citing *In re Louquet*, 125 B.R. 267, 268 (9th Cir. BAP 1991)). Section 1329(b)(1) specifies which Code provisions apply to the modified plan:

(b) (1) Sections 1322(a), 1322(b), and 1323(c) [6] of this title and the requirements of section 1325(a) [7] of this title apply to any modification under subsection (a) of this section.

11 U.S.C. § 1329. Absent from the above language is a reference to § 1325(b), the disposable income provision.

■ Appellant sought to modify the plan to increase its length from 32 months to at least 36 months. Appellant bore the burden of proof to show facts supporting modification after Than objected to the motion. *See In re Anderson*, 21 F.3d 355, 358 (9th Cir. 1994); *In re O'Brien*, 181 B.R. 71, 78 (Bankr. D.Ariz.1995). Before reviewing the merits of

Appellant's contentions, the Panel will address Than's threshold defenses.

### 1. Appellant's Standing

■ Than contends that Appellant lacked standing to modify the confirmed plan. Standing is a jurisdictional requirement which is open to review at all stages of litigation. *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 253, 114 S.Ct. 798, 800, 127 L.Ed.2d 99 (1994). The burden to establish standing remains with the party claiming that standing exists. *See E.F. Hutton & Co., Inc. v. Hadley*, 901 F.2d 979, 984 (11th Cir.1990).

Appellant contends that it is the successor-in-interest to the unsecured claimants and the "holder of an allowed unsecured claim," therefore it is entitled to seek plan modification pursuant to § 1329(a). Than disputes the bona fides of Appellant's claim assignment and contends that Appellant did not comply with Federal Rule of Bankruptcy Procedure 3001.

■ Rule 3001 provides that the transferee of a claim after a proof of claim has been filed must file evidence of the transfer with the Clerk's Office. The Clerk then notifies the alleged transferor, who is given an opportunity to object. Appellant contends that it has complied with Rule 3001. The bankruptcy court agreed and at the hearing stated: "MAX RECOVERY, INC. filed notices of assignment to it of the Chemical Bank and Bank of America credit card claims on September 27th, 1995 and October 24th, 1995 respectively." Hearing Transcript of August 8, 1996, page 4, lines 10–13. In the absence of an objection from Chemical Bank or Bank of America, the Panel concludes that Appel-

---

**6.** Section 1329(a) and (b)(2) are the functional equivalents of §§ 1323(a) and (b). *In re Moss*, 91 B.R. 563, 566 (Bankr.C.D.Cal.1988).

**7.** Section 1325(a) provides, in pertinent part:
(a) Except as provided in subsection (b), the court shall confirm a plan if—
(1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title;

. . . .

(3) the plan has been proposed in good faith and not by any means forbidden by law;

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;

. . . .

(6) the debtor will be able to make all payments under the plan and to comply with the plan.
11 U.S.C. § 1325.

lant was the current holder of those allowed unsecured claims and had standing pursuant to § 1329 to seek modification.

### 2. Whether Appellant's Motion was Barred by Res Judicata or Laches.

Than contends that Appellant was bound by the plan provisions, or in any case waited too long to bring its objections.

Section 1327 states the *res judicata* effect of plan confirmation as follows:

(a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

11 U.S.C. § 1327.

■ Another way of looking at the binding effect of confirmation is that the plan is a contract between the debtor and the debtor's creditors. *In re Richardson*, 192 B.R. 224, 228 (Bankr.S.D.Cal.1996).

■ The Code provides a means for modifying the plan; that provision is § 1329. *Res judicata* does not apply to the provisions sought to be modified. "Modification pursuant to § 1329 provides a mechanism to change the binding effect of § 1327." *Powers*, 202 B.R. at 622 (citing *Witkowski*, 16 F.3d at 745). Appellant was not precluded by principles of *res judicata* embodied in § 1327 from seeking modification of the plan.

Than also contends that the equitable doctrine of laches should have prevented the bankruptcy court from entertaining Appellant's motion. Appellant did not object to the plan or bring the motion to modify until over a year following plan confirmation and nine months following the trustee's notice.

■ Laches involves an inexcusable delay in exercising a known right. *See Stevens Tech. Servs., Inc. v. S.S. Brooklyn*, 885 F.2d 584, 588 (9th Cir.1989). Laches is not appropriate in this case because of Appellant's statutory right to seek modification of the plan. The time for such a motion is "any time after confirmation of the plan but before

the completion of payments under such plan...." § 1329(a). Than has not completed the payments under the plan, and Appellant's motion was timely.

### 3. Grounds for Plan Modification

#### (a) No Threshold Requirement

Than contends that Appellant did not meet the threshold showing that Than's financial situation had changed substantially and in an unanticipated manner. Appellant, however, contends that § 1329 does not require that standard of proof, and the fact that the allowed claims were less than anticipated was a sufficient showing for modification.

A number of courts have held that the *res judicata* effect of a confirmed plan required that any modification must be the result of an unanticipated and/or substantial change in the debtor's ability to pay.[8] The unanticipated, substantial change test is judicial gloss to § 1329, however, and the standard was seriously questioned by the Seventh Circuit's 1994 *Witkowski* opinion.

In *Witkowski*, the appellate court held that the bankruptcy court did not abuse its discretion by confirming a modified plan proposed by the trustee after fewer claims were filed than anticipated. The debtors' plan was for "47–months or such lesser time as required." The plan would have been completed in 43 months, so the trustee moved to change the debtor's percentage plan to a pot plan, requiring the full 47 months of payments. Using a plain meaning analysis, *Witkowski* held that § 1329 did not require burdensome proof or even a threshold proof of change in circumstances, but rather gave the movant the absolute right to seek modification. *Witkowski*, 16 F.3d at 744. Modification being discretionary, however, the appellate court held that the bankruptcy court could consider a change in circumstances in resolving the motion. *Id.* at 746.

The Ninth Circuit BAP followed *Witkowski* in *Powers*, where the Chapter 13 trustee sought to increase the monthly amount of plan payments based on the debtor's in-

---

**8.** *See Anderson*, 21 F.3d at 358 (in *dicta*); *Louquet*, 125 B.R. at 268 (citing *In re Arnold*, 869 F.2d 240 (4th Cir.1989)); *In re Wilson*, 157 B.R. 389, 390 (Bankr.S.D.Ohio 1993).

creased income. The bankruptcy court granted modification because the income change was substantial and unanticipated. The debtor appealed, contending that the bankruptcy court had used the wrong standard. The BAP held that "a party has an absolute right to request modification between confirmation and completion of the plan" subject to the limitations of § 1329. The BAP further held that § 1329 does not impose a changed financial situation requirement.[9] However, it affirmed the bankruptcy court's discretion to modify based on a consideration of changed financial circumstances as a factor. *Powers*, 202 B.R. at 622.

 Appellant's modified plan complied with § 1329(a)(2) in that it sought to extend the plan and, thus, increase plan payments. Appellant did not need to show changed financial circumstances. In addition, Appellant presented evidence of changed circumstances, in that fewer claims than anticipated were filed. Appellant's motion to modify was broader than the issue of plan length. It raised the issue of Debtor's increased ability to pay based on the changed circumstances. The bankruptcy court based its denial of Appellant's motion on the inapplicability of § 1325(b), which it perceived as the major argument for modification. The court distinguished *Witkowski* as not being a

§ 1325(b) case because the plan in *Witkowski* always exceeded 36 months.

The record before us does not show that the court considered either the substantial and unanticipated change standard or a more lenient standard for modification in analyzing the facts or in reaching its conclusions. *Powers* was decided subsequently, and its effects on the facts of this case should be examined.

Although we hold herein that § 1325(b) does not apply to this plan modification, we also remand with instructions that the bankruptcy court consider the *Powers* standard, along with factors affecting modification expressly or impliedly raised by the pleadings. Some factors might include: 1) Than's increased income, if any, due to the changed circumstances[10] and any change in his expenses; 2) the effect of the attorney's fees on the plan length; 3) whether the modified plan was proposed in good faith, pursuant to § 1325(a)(3)[11]; and 4) whether the modified plan complied with § 1329(b) and (c).

### (b) Applicability of § 1325(b)

Appellant contends that Than will receive a windfall unless all of his disposable income for at least 36 months, or the estimated 38 months, is applied to the plan.[12] Appellant

---

**9.** Judge Volinn specially concurred in *Powers*, stating that the Panel did not need to reach the substantial change issue, since the debtor did not dispute her increased income, and the Panel could affirm using either standard. Judge Volinn pointed out that other Ninth Circuit cases run contrary to *Witkowski*, and that the *Anderson* dicta should be given "due deference." *Powers*, 202 B.R. at 624. Notwithstanding the insightful concurring opinion in *Powers*, the Panel addressed the issue of the standard for modification under § 1329 which was before it. Ninth Circuit precedent has been set. *In re Ball*, 185 B.R. 595, 597 (9th Cir. BAP 1995) (holding that the Panel is bound by decisions of prior Panels).

**10.** The modified plan, apparently, would provide a 14.8% payout to unsecured creditors versus the 11% payout in Than's plan, calculated as follows: 36 months × $300 = $10,800, divided by $73,-065.85 in claims = 14.8%.

**11.** Each party argues that the other's plan was not proposed in good faith. The good faith requirement for Than's plan was met at the time of confirmation and is *res judicata*. *In re Gregory*, 705 F.2d 1118, 1121 (9th Cir.1983) (a creditor

may not after confirmation assert that the plan was not filed in good faith as required by § 1325(a)(3)). Than contends that Appellant sought only to harass him. The proponent of the modified plan must show that the modified plan is proposed in good faith. *See Powers*, 202 B.R. at 622; K. Lundin, Chapter 13 Bankruptcy § 6.42, at 6–129 to 6–130 (2d ed.1994).

**12.** In essence, Appellant contends that Than's plan should be interpreted as a pot plan because granting Than a discharge under the percentage plan would be unfair. In practice, plans paying less than 100% to the unsecured claimants generally are not proposed for less than 36 months to avoid objection. Appellant contends that its predecessors in interest did not object at plan confirmation because the plan complied with the Code at that time. Nevertheless, the plan expressly provided that the payments might be completed in less than the stated 38 months. The opportunity to object to the percentage plan existed at the time of plan confirmation. Therefore, the Panel does not see this appeal as a "test case" for the legality of percentage plans versus pot plans. *But see Witkowski*, 16 F.3d at 746 and n. 11

contends that § 1329 incorporates the provisions of § 1325(b).

The Code mentions plan length in three provisions: (1) Section 1322(d) provides that a plan cannot be longer than three years without court approval, with a maximum five years; (2) If there is an objection at plan confirmation, then § 1325(b) requires that the debtor devote all projected disposable income for at least 36 months if the debtor cannot pay the full allowed amount of such objecting claim; and (3) Section 1329(c) requires court approval for modified plan payments "over a period that expires after three years after the time that the first payment under the original confirmed plan was due," and provides a maximum five-year limit.

■■■■■ The Code does not prohibit a plan that is less than 36 months in duration in the absence of an objection by the trustee or a creditor "to the confirmation of a plan." § 1325(b)(1). In this case, there was no such objection to the plan or to the modified plan, which was proposed by the creditor. If the trustee and all creditors are satisfied with the plan and it complies with the Code, the debtor is not required to meet the best efforts test, *i.e.*, to apply all projected disposable income to the plan for 36 months.

Appellant cites *In re McKinney*, 191 B.R. 866 (Bankr.D.Or.1996), which presented unusual facts and procedure. The Chapter 13 plan provided for payments to priority claims only at $125 per month for 12 months and $230 per month for an unspecified time thereafter. The unsecured claims were to receive 0%. The debtor needed 36 months to pay the estimated priority claims. Fewer than anticipated priority claims were filed and the debtor paid them off in 12 months. The trustee filed a motion to modify which sought, preliminarily, an interpretation of the plan as being a 36-month plan on the premise that a plan under 36 months would violate § 1325(b)(1).

Using contract principles, the bankruptcy court determined that the parties intended the plan to continue for 36 months: modification made the plan internally consistent. (Modification also resulted in payments to the unsecured creditors.)

The court also held that § 1325(b)(1) applied to a modification by concluding that the exception language in § 1325(a)—"Except as provided in subsection (b) . . ."—incorporates the requirements of § 1325(b). *McKinney*, 191 B.R. at 869. *See also* K. Lundin, *supra.*, § 6.45 at 6–134 (the exception "captures [and applies] both §§ 1325(a) and 1325(b)").

Assuming, *arguendo, McKinney's* statutory interpretation is correct, we cannot reach the same conclusion. By its terms, § 1325(b) applies after an objection to plan confirmation. Section 1325(b) would not apply in this case where neither the Appellant nor the trustee objected to the provisions of the plan or the modified plan. Thus, the Panel need not reach the issue of whether the ability-to-pay or disposable-income tests of § 1325(b) are incorporated by § 1329, because either way, § 1325(b) would not apply here.[13]

Appellant also contends that a previous Ninth Circuit BAP opinion would require a § 1325(b) disposable income test for plan modification even when no objection was made previously. In *Louquet*, 125 B.R. at 267–68, the Chapter 13 trustee did not raise a disposable income objection at confirmation of the original plan. The plan provided unsecured claimants one percent of their allowed claims. The trustee sought plan modification to increase payments based on the debtor's increased income. The bankruptcy court denied the trustee's motion because the plan did not contain a disposable income provision. The BAP reversed, holding that the trustee was not precluded from seeking modification of the plan for failing to raise a disposable income objection. The BAP held

---

(holding that the bankruptcy court did not abuse its discretion by modifying the plan based on its legal conclusion that the Code anticipates pot plans, and disavowing percentage plans as inconsistent with § 1325(b)).

**13.** Some authorities suggest the situation might be different when the debtor proposes the modi-

fied plan. *See* 8 Collier On Bankruptcy § 1329.05, at 1329–10 (15th ed. 1997) ("[I]f the trustee or the holder of an unsecured claim objects to a modification proposed by the debtor, then the ability-to-pay test of section 1325(b) must probably be satisfied as well.").

that modification was subject "to the same Code requirements imposed when initial plan confirmation is at issue," and cited § 1329(b)(1). *Id.* at 268. The opinion also stated that the trustee should have "an opportunity to present evidence that the Louquets' higher monthly income would justify an increase in plan payments." *Id.*

*Louquet* is consistent with the provisions of § 1329(a)(1) for modification of a Chapter 13 plan to increase the payments based on evidence of the debtor's increased income. The opinion did not contain a statutory analysis of the § 1329(b)(1) requirements, nor did it hold specifically that the disposable income test of § 1325(b) applied to the modified plan.

According to legislative history, Congress contemplated in enacting § 1329 a "motion to modify the plan if the debtor's income increased so the court could consider all of the circumstances of a particular debtor to determine whether higher payments should be required." COLLIER, *supra.*, § 1325.08[4][a], at 1325-50 (citing Oversight Hearings on Personal Bankruptcy Before the Subcommittee on Monopolies and Commercial Law of the House Committee on the Judiciary, 97th Cong., 1st and 2nd Sess. 223 (1981-82)). When § 1325(b) is inapplicable, the § 1329 analysis is based entirely on the equities of the situation.

### CONCLUSION

Appellant, an assignee and holder of allowed unsecured claims, had standing to seek modification of Than's Chapter 13 plan. Appellant's proposed modification pursuant to § 1329 was not barred by § 1327, the *res judicata* effect of the confirmed plan, or by laches. The Panel need not resolve Appellant's contention that a modified plan must meet the disposable income test of § 1325(b) because the facts did not support such an application.

We agree with the bankruptcy court's legal conclusion here that § 1325(b) was not applicable to § 1329. However, the bankruptcy court did not consider *Powers* in applying the standard and analyzing the factors for plan modification. Therefore, we **VACATE** the bankruptcy court's order **and REMAND** with instructions that the court consider the factors for modification in light of *Powers* and this opinion.