**In re Janice L. POWERS, Debtor.**

**Bankruptcy No. 90 B 08822.**

United States Bankruptcy Court, N.D. Illinois, E.D.

April 27, 1992.

---

Mark Ryan, Chicago, Ill., for Trustee.

Carleen L. Cignetto, Grochocinski & Grochocinski, Chicago, Ill., for debtor.

## MEMORANDUM, OPINION AND ORDER

### FACTS

ROBERT E. GINSBERG, Bankruptcy Judge.

This matter is before the court on the trustee's motion to amend Janice Powers' ("Debtor") Chapter 13 plan to provide for 100% payment to unsecured creditors.

The facts are not in dispute. The debtor filed for relief under Chapter 13 of the Bankruptcy Code on May 14, 1990. Pursuant to the debtor's plan confirmed on September 7, 1990, the debtor was required to pay the trustee $545 per month for 60 months. Under the plan, her unsecured creditors were to receive 54% of their claims. This was the minimum dividend required to satisfy the "best interests" test, i.e., to assure creditors they would receive payments under the Chapter 13 plan at least equal in present value terms to what they could have expected to receive had the debtor opted for Chapter 7 instead of Chapter 13. *See,* 11 U.S.C. § 1325(a)(4). The main asset that would have been available to creditors in a Chapter 7 case for this debtor was her ⅓ interest in real property located at 7521 W. 62nd, Summit, Illinois. At the time of the petition, she scheduled the total value of the property at $124,000.

In January of 1992, about fifteen months after her plan was confirmed, the debtor brought a motion to sell her interest in the property to her mother and sister for $41,667, which was one-third of the appraised value. The court approved the motion. The draft order, submitted by debtor's counsel, approved the debtor's motion to sell the property, provided for some of the sale proceeds to be distributed to the creditors via the trustee, and provided that the debtor would be discharged from her debts when the trustee distributed sufficient sale proceeds to those creditors such that each unsecured creditor who had filed a timely proof of claim received 54% of its claim.

That draft order was signed on January 13, 1992, and was docketed on January 15, 1992.

On January 29, 1992, the trustee filed a motion seeking to vacate the January 15, 1992 order, on the grounds that the order effectively modified the plan in an impermissible manner by reducing the plan's term to 15 months while providing the unsecured creditors with only 54% of their claims. As the trustee sees it, this violated the "best effort test" found in § 1325(b) of the Bankruptcy Code requiring the debtor to either pay all creditors in full in 36 months or to make all disposable income available for a 36–month period. Because many of the debtor's scheduled unsecured creditors failed to file timely proofs of claim, the trustee contends, and the debtor concedes, that the nonexempt net proceeds produced by the sale of the debtor's interest in the Summit property are more than enough to provide payment in full to those unsecured creditors who did file timely proofs of claim. The debtor and trustee have briefed the issue of whether the trustee may seek to amend the debtor's plan to provide for a 100% distribution to the unsecured creditors. For the reasons stated below, the court grants the trustee's motion to modify the debtor's plan.

## JURISDICTION AND PROCEDURE

This court has jurisdiction over this dispute under 28 U.S.C. § 1334(b) as a matter arising under § 1329 of the Bankruptcy Code. This matter is before the court for determination under Local Rule 2.33 of the United States District Court for the Northern District of Illinois which automatically refers bankruptcy cases and proceedings to this court for hearing and determination. This is a core proceeding under 28 U.S.C. § 157(b)(2)(L) as a matter relating to the confirmation of plans of reorganization.

## DISCUSSION

The issue to be resolved is whether the trustee may modify the debtor's plan under § 1329 of the Bankruptcy Code.[1] Section 1329 provides, in pertinent part:

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time for such payments; ...

(b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.

The language of the Code is clear and unmistakable; the trustee has standing to seek a modification of payments under the plan and of the duration of the plan at any time between confirmation of the plan and completion of the plan payments. More specifically, the statute allows the trustee to do exactly what the trustee seeks to do here, i.e., propose a modification of the debtor's plan to seek an increase in the dividend payable to unsecured creditors under the debtor's confirmed Chapter 13 plan.

---

1. The parties appear to treat this motion as one brought under Fed.R.Bankr.P. 9023 and Fed. R.Civ.P. 59, and the court will so treat it. The court will therefore not reach the question of whether relief can be obtained under Fed. R.Civ.P. Rule 60(b) applicable to this proceeding by virtue of Fed.R.Bankr.P. 9024, nor will the court address the question of whether an order modifying a plan is an order of confirmation for purposes of § 1330 of the Bankruptcy Code. It is of note in this regard, however, that it is unclear whether the debtor's proposed order was served on the trustee before being transmitted to the court. Of course, it is clear that any draft order must be served on all parties involved in the litigation before being transmitted to the court for entry. *Cf., In re Wisconsin Steel,* 48 B.R. 753 (Bankr.N.D.Ill.1985). In addition, the draft order provides for relief in the form of a plan amendment that was not sought in the original motion. Had the court been aware of either the fact that the debtor's draft order had not been served on the trustee before being sent to the court for entry or the fact that the order provided for relief not sought in the matter, the court never would have signed the order. Obviously, the court erred in entering an order providing for relief not sought in the motion.

It is hard to imagine a clearer case for the application of Justice Scalia's constant admonition that when the plain language of the Code is clear, there is no need to look to the legislative history or other extraneous sources for guidance. *See, e.g., Dewsnup v. Timm,* — U.S. —, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) (Scalia, J., dissenting.); *Union Bank v. Wolas,* — U.S. —, 112 S.Ct. 527, 116 L.Ed.2d 514 (1992) (Scalia, J., concurring.); *U.S. v. Nordic Village,* — U.S. —, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1991). The statute unmistakably says the trustee can do what the trustee seeks to do. This court agrees with Justice Scalia's approach and believes the Trustee's motion should be granted. With all due deference to Lewis Caroll's Humpty Dumpty, words do not mean what I say they mean. They mean what they mean in common parlance. *See,* Carroll, Lewis, *Through the Looking Glass* (C.L. Dodgson, ed.) 205 (1934).[2]

■ Despite the clear language of the statute, some courts add a precondition to § 1329 relief that nowhere appears in the statute by requiring the party seeking a plan modification to show that the debtor has experienced a substantial and unexpected change in financial circumstances. *See, e.g., In re Euerle,* 70 B.R. 72 (Bankr. D.N.H.1987); *In re Fitak,* 92 B.R. 243 (Bankr.S.D.Ohio 1988). The source of this requirement is less than clear. There certainly is no such requirement in the language of § 1329. "The statutory language clearly expresses Congressional intent, and, in the absence of any ambiguity, a court may not read another meaning into the statute." *Matter of Cotton,* 102 B.R. 891 (Bankr.M.D.Ga.1989). By its terms, § 1329 does not require the movant to demonstrate a substantial, unanticipated change in the debtor's financial circumstances. *See, In re Perkins,* 111 B.R. 671

(Bankr.M.D.Tenn.1990) (the Code does not require changed circumstances, anticipated or unanticipated, to modify a plan. However, changed circumstances may be relevant evidence relating to the statutory standards.); *In re Larson,* 122 B.R. 417 (Bankr.D.Idaho 1991) (no absolute condition or restriction on the right to propose a modification to a confirmed Chapter 12 plan would be imposed outside the conditions expressed in the Code, and the proponent of a modification would not be required, as a matter of law, to prove a change in the debtor's financial or other circumstances as a basis to modify the plan.).

While Chapter 13 in general contemplates that the plan is the debtor's plan, *see* 11 U.S.C. § 1321, § 1329 of the Bankruptcy Code clearly limits that approach. Congress specifically addressed the question of who could and, by implication who could not, seek to modify a debtor's Chapter 13 plan. Holders of fully secured claims cannot seek to modify a Chapter 13 plan. 11 U.S.C. § 1329(a). Debtors, trustees, and holders of unsecured claims can seek to modify a Chapter 13 plan. *See,* 11 U.S.C. § 506(a). When Congress dealt with § 1329 of the Bankruptcy Code in 1984, it could have imposed preconditions to modification by a trustee, holder of an unsecured claim and/or a Chapter 13 debtor. It did not choose to do so, and this court will not step in where Congress declined to tread.[3]

Since there is nothing in § 1329 express or implied in the plain language of § 1329 suggesting the application of a change of circumstances test as a prerequisite to a trustee plan amendment under § 1329, this court is reluctant to create such a test out of whole cloth. Therefore, the trustee need not show that Ms. Powers experienced a substantial, unanticipated change

---

**2.** "When *I* use a word," Humpty Dumpty said, in rather a scornful tone, "it means just what I choose it to mean—neither more nor less." "The question is," said Alice, "whether you *can* make words mean so many different things." "The question is," said Humpty Dumpty, "which is to be master—that's all." from *Respectfully Quoted* (S. Platt, ed.) 377 (1989).

**3.** It is worth noting that Congress included in Chapter 13 a specific provision for dealing with changes in circumstances that render a debtor's Chapter 13 plan infeasible. *See,* § 1328(b) (the "hardship discharge".) While that provision does suggest plan modification as one method for dealing with such a change in circumstances, it nowhere suggests that change in circumstances is a prerequisite to § 1329 relief.

in circumstances in order to seek a modification of the plan, but must only demonstrate compliance with the requirements of § 1329 of the Code.[4]

■ Thus, the question becomes whether either the debtor's proposed amendment or the trustee's proposed amendment can be approved under the statutory requirements of § 1329. Under § 1329 of the Bankruptcy Code, the confirmed plan, as modified, becomes the plan. *See, In re Rincon,* 133 B.R. 594, 596 (Bankr.N.D.Tex.1991); *In re Stafford,* 123 B.R. 415 (Bankr.N.D.Ala. 1991). Therefore, the modified plan must conform to the statutory requirements for confirmation. *In re Louquet,* 125 B.R. 267 (9th Cir. BAP 1991).

■ In the proposed sale order of January 15, 1992, the debtor's plan is effectively modified to a 15–month plan providing for unsecured creditors to receive 54% of their claims. The debtor's amended plan does not meet the statutory requirements for plan confirmation, and therefore the debtor's confirmed plan may not be modified in such a fashion. This plan would violate the disposable income or best efforts test set out in § 1325(b) of the Bankruptcy Code. Section 1325(b) requires the debtor's plan to either apply all of the debtor's disposable income for at least 3 years to the plan, or, to pay 100% of the claims filed within 3 years of confirmation in the face of an unsecured creditor or Chapter 13 trustee objection to the plan. Since the unsecured creditors here will not receive 100% of their claims, the trustee certainly may object to confirmation of a plan providing for less than full repayment while making the debtor's disposable income available to her unsecured creditors for only 15 months. Because the trustee has objected to a 15–month plan paying unsecured creditors 54% of their claims, the plan cannot be so modified, and the order of January 15, 1992 approving the debtor's amended plan must be vacated.[5]

■ The January 15, 1992 order must also be vacated on due process grounds. By failing to serve the trustee with the proposed order before sending it to the court, the debtor deprived the trustee of the opportunity to object to the order prior to its entry. In addition, the trustee was also deprived of the opportunity to raise the point that the order provides for relief, plan amendment, that was not sought in the motion to sell.

■ Thus, the question becomes whether the trustee's proposal meets the requirements of § 1329. All that is required by § 1329 is that the modification meet certain conditions of §§ 1322, 1323, and 1325.[6] The trustee seeks to modify the

---

4. Because this court finds that the trustee must only demonstrate compliance with the requirements of the Code and need not show any change in circumstances to be entitled to relief under § 1329, the court need not determine whether the sale of real estate and the failure of many unsecured creditors to file claims constitute changed circumstances.

5. It is true that § 1329 only requires that an amendment satisfy § 1325(a) to be approved, and does not specifically require compliance with § 1325(b). However, § 1325(a)(1), which clearly does apply to a § 1329 plan amendment, requires the amendment to comply "... with the provisions of this chapter ..." Section 1325(b) is one of the provisions of this chapter. *See,* § 103(h). Section 1325(b) has not been complied with. Therefore, the debtor's proposed plan modification cannot be approved under § 1329(b)(1). In effect, § 1325(b) comes in through the back door rather than the front.

6. Section 1329 provides in pertinent part:

(b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.
Section 1322(a) and (b) provide:
(a) The plan shall—
  (1) provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan;
  (2) provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim; and
  (3) if the plan classifies claims, provide the same treatment for each claim within a particular class.
(b) Subject to subsections (a) and (c) of this section, the plan may—
  (1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly

debtor's plan so that unsecured creditors will receive 100% of their claims. This modification satisfies the requirements of § 1329 of the Bankruptcy Code. First, as discussed above, the trustee has standing to seek the modification. Second, the trustee may clearly seek to have the debtor's plan modified to provide for increased payments to general unsecured creditors. *See*, § 1329(a)(1). Third, the motion is timely as the payments under the plan have not been completed because the trustee has not distributed the sale proceeds. *Cf., In re Chancellor*, 78 B.R. 529 (Bankr.N.D.Ill. 1987) (creditor's motion to modify the plan was untimely when debtor had actually paid each unsecured creditor the 10% it was to receive under the plan, even though only 14 months of the 60–month plan had elapsed. "Completion of payments" occurs when the debtor has completed its obligation to each class of creditors under the plan.). Finally, the trustee's proposed modification satisfies the requirements of § 1322(a) and (b) with respect to mandatory and permissive plan provisions, § 1323(c) with respect to the rights of holders of secured claims, and satisfies all of the conditions provided in § 1325(a) for confirmation of an original Chapter 13 plan. The trustee's proposal also satisfies all of the other requirements of § 1329.

## CONCLUSION

For the foregoing reasons, the trustee's motion to vacate the order of January 13, 1992 and to modify the debtor's plan to pay

against any class so designated; however, such plan may treat claims for consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims;

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

(3) provide for the curing or waiving of any default;

(4) provide for payments on any unsecured claim to be made concurrently with payments on any secured claim or any other unsecured claim;

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim on which the last payment is due after the date on which the final payment under the plan is due;

(6) provide for the payment of all or any part of any claim allowed under section 1305 of this title;

(7) subject to section 365 of this title, provide for the assumption, rejection, or assignment o any executory contract or unexpired lease of the debtor not previously rejected under such section;

(8) provide for the payment of all or part of a claim against the debtor from property of the estate or property of the debtor;

(9) provide for the vesting or property of the estate, on confirmation of the plan or at a later time, in the debtor or in any other entity; and

(10) include any other appropriate provision not inconsistent with this title.

Section 1323(c) provides:

(c) Any holder of a secured claim that has accepted or rejected the plan is deemed to have accepted or rejected, as the case may be, the plan as modified, unless the modification provides for a change in the rights of such holder from what such rights were under the plan before modification, and such holder changes such holder's previous acceptance or rejection.

Section 1325(a) provides:

(a) Except as provided in subsection (b), the court shall confirm a plan if—

(1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title;

(2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;

(3) the plan has been proposed in good faith and not by any means forbidden by law;

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;

(5) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder; and

(6) the debtor will be able to make all payments under the plan and to comply with the plan.

unsecured creditors 100% of their claims is granted.