**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**October 16, 2006**

**Charles R. Fulbruge III**
**Clerk**

UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT

No. 05-10739

In The Matter Of: SERGIO MIGUEL MEZA; SHARON SAUCEDA MEZA,

Debtors.

SERGIO MIGUEL MEZA; SHARON SAUCEDA MEZA,

Appellees,

versus

TIM TRUMAN,

Appellant.

Appeal from the United States District Court
for the Northern District of Texas
(4:04-CV-753)

Before JONES, Chief Judge, and BARKSDALE and BENAVIDES, Circuit Judges.

RHESA HAWKINS BARKSDALE, CIRCUIT JUDGE:

Chapter 13 Trustee Tim Truman appeals the district court's affirming the following bankruptcy court holding: Trustee's requested modification of the confirmed plan of debtors Sergio and Sharon Meza could *not* be considered because it was untimely, Debtors having paid the plan balance while the modification motion was pending. **VACATED and REMANDED.**

Debtors filed a voluntary petition for chapter 13 bankruptcy in April 2001. Truman, the standing chapter 13 Trustee for the Northern District of Texas, was appointed Trustee.

On 17 January 2002, Debtors filed their bankruptcy plan. The plan, confirmed on 2 April 2002, required Debtors to "pay the sum of $350.00, per month, ... for 50 months ... for a total of $17500". Debtors' unsecured creditors, owed a total of $23,181.59, were to receive "approximately .00%" for their claims.

Nearly two years later, on 26 February 2004, Trustee received Debtors' 2003 federal income-tax refund, in the amount of $3,029. Under the plan, "the Trustee [wa]s authorized to receive, endorse, and apply to any *delinquent payments under the Plan*, any Income Tax Refund payable to debtor(s) during the pendency of this case". (Emphasis added.) Debtors, however, were *not* delinquent in their payments. Nevertheless, Trustee wanted the non-exempt portion of this refund, $1,545 in disposable income, applied to amounts due under the plan.

Accordingly, on 23 March, Trustee filed a motion to modify Debtors' plan; the requested modification would increase the distribution to Debtors' unsecured creditors from zero percent under the confirmed plan to "approximately 8.40 %". This would increase Debtors' total payment from $17,500 to $19,045. Trustee provided Debtors 20 days notice, as required by Federal Rule of

Bankruptcy Procedure 3015(g), and set the motion for pre-trial conference before the bankruptcy court on 7 May 2004. (As discussed *infra*, Debtors do *not* dispute that the required notice was given.)

On 7 April, however, approximately a month before the scheduled hearing, Debtors paid Trustee $5,600, which paid in full the balance of their confirmed plan. To do so, Debtors refinanced their home, which was exempt property under the plan. On 3 May, Debtors filed an objection to Trustee's proposed modification, asserting it was untimely. Because they had already completed payments under the plan, Debtors claimed they were entitled to a discharge from bankruptcy.

Following a hearing on 7 July 2004, the bankruptcy court ruled the modification request was untimely: "By the time the Modification was presented to the Court, the Debtors had completed all payments required by the terms of the plan. Thus, *in accordance with the unambiguous language of 11 U.S.C. § 1329(a)*, the Modification is disapproved as untimely". ***In re Meza***, No. 01-42612-BJH-13, slip op. at 8-9 (Bankr. N.D. Tex. Aug. 4, 2004)(emphasis added). The district court affirmed. ***Truman v. Meza***, No. 4:04-CV-753-Y, slip op. (N.D. Tex. June 7, 2005).

## II.

The decision whether to modify a chapter 13 plan is reviewed for abuse of discretion. ***In re Mendoza***, 111 F.3d 1264, 1269 (5th

3

Cir. 1997).  Along that line, legal conclusions of the bankruptcy and district courts are reviewed *de novo*.  **Id**. at 1266.  Although we may benefit from the bankruptcy and district courts' analysis of the matter, the amount of persuasive weight accorded to the court's conclusion is subject to our discretion.  **In re United States Abatement Corp**., 79 F.3d 393, 397-98 (5th Cir. 1996)(internal citation omitted).

Chapter 13 of the Bankruptcy Code, 11 U.S.C. § 1301, *et seq.*, was created "to address consumer credit loss during the Great Depression by providing a completely voluntary proceeding for consumers to amortize their debts out of future earnings".  **In re Nolan**, 232 F.3d  528, 530 (6th Cir. 2000).  Chapter 13 permits wage-earning debtors "to reorganize with a repayment plan as an alternative to seeking a complete discharge of debts through the Chapter 7 bankruptcy liquidation process".  **Id**.  A confirmed chapter 13 plan is, of course, binding on all parties.  11 U.S.C. § 1327(a).  Under 11 U.S.C. § 1329, however, the plan may be modified by either the debtor, trustee, or an unsecured creditor. *See* **In re Solis**, 172 B.R. 530, 533 (Bankr. S.D.N.Y. 1994) ("Although section 1327(a) binds the debtor and the creditors, a confirmed plan may be modified at any time after confirmation before payment is completed.").  Section 1329 states:

> (a) *At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be*

4

*modified*, *upon request of the debtor, the trustee, or the holder of an allowed unsecured claim*, to –

    (1)   increase or reduce the amount of payments on claims of a particular class provided for by the plan;

    (2)   extend or reduce the time for such payments; or

    (3)   alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.

    (b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.

    (2)   *The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved*.

11 U.S.C. § 1329 (2004)(prior to 2005 revision, which added another basis for modification of a confirmed plan) (emphasis added). Modification is based on the premise that, during the life of the plan, circumstances may change, and parties should have the ability to modify the plan accordingly. **In re Taylor**, 215 B.R. 882, 883 (Bankr. S.D. Cal. 1997).

A.

Some courts have required an unanticipated, substantial change to occur before permitting such plan modification. *See* **In re Hoggle**, 12 F.3d 1008, 1011 (11th Cir. 1994) ("Congress designed § 1329 to permit modification of a plan due to changed circumstances

5

of the debtor unforeseen at the time of confirmation."); *In re Furgeson*, 263 B.R. 28, 37-38 (Bankr. N.D.N.Y. 2001) (citing cases supporting this view); *see also* 5 NORTON BANKR. L. & PRAC. 2d § 124:2 (noting several courts require "a *substantial* or even *unanticipated* change in circumstances, or else the creditor is bound by confirmation of the original plan") (emphasis in original). A growing number of courts, however, do *not* require such a change. *See, e.g.*, *Barbosa v. Soloman*, 235 F.3d 31, 41 (1st Cir. 2000) ("refrain[ing] from adopting the substantial and unanticipated test for seeking a modification pursuant to § 1329"); *In re Witkowski*, 16 F.3d 739, 742 (7th Cir. 1994) (emphasizing that, "[b]y its terms, § 1329 does not provide for any threshold requirement to modify a bankruptcy plan"); *In re Sutton*, 303 B.R. 510, 516 (Bankr. S.D. Ala. 2003) (citing *Witkowski* for the proposition that § 1329's plain language imposes no substantial change requirement); *In re Sounakhene*, 249 B.R. 801, 803 (Bankr. S.D. Cal. 2000) ("A showing of substantially changed circumstances is not a prerequisite to plan modification."); *In re Phelps*, 149 B.R. 534, 538 (Bankr. N.D. Ill. 1993) (noting "Congress specifically provided for a change in circumstances test under other provisions of the Bankruptcy Code, including at least one in Chapter 13"). Because we agree with this latter approach, we need *not* consider whether Debtors' income-tax refund constituted a substantial or unanticipated change.

Consistent with § 1329's plain language, it is largely undisputed "that a plan cannot be modified once all payments have been made". *In re Moss*, 91 B.R. 563, 565 (Bankr. C.D. Cal. 1988). "[I]f a trustee could amend a Chapter 13 plan *after* the debtor completes his or her payments to the trustee, the mandatory nature of the discharge provision [11 U.S.C. § 1328] would be eviscerated". *In re Casper*, 154 B.R. 243, 247 (N.D. Ill. 1993) (emphasis added). Accordingly, if a debtor pays his plan balance and the trustee then seeks to modify the plan under § 1329 to account for newly-acquired funds, modification is *not* permitted. *See, e.g.*, *In re Bergolla*, 232 B.R. 515, 516 (Bankr. S.D. Fla. 1999) ("lump sum payment was made from the proceeds of the sale of the Debtors' exempt homestead property" to complete payments under the plan *before* the trustee filed a motion to modify). In such instances, debtors typically contend a trustee's "modification is time-barred because they completed the plan before the [modification] motion was filed". *In re Sounakhene*, 249 B.R. at 802.

On the other hand, it appears a trustee's motion is timely if filed *before* payments are completed. *See In re Profit*, 283 B.R. 567, 572 (B.A.P. 9th Cir. 2002) (stating relevant issue as "[w]hether Trustee's motion to modify the chapter 13 plan was timely filed before all plan payments had been completed, pursuant

7

to § 1329(a)"); *In re Sounakhene*, 249 B.R. at 804 ("The parties agree the Trustee must file his motion before all the payments under the plan are complete."). Therefore, if the trustee files a modification motion and the debtor *then* attempts to complete plan payments, the debtor appears to unfairly attempt to circumvent § 1329(b)(2)'s plain language that a "plan as modified becomes the plan *unless*, after notice and a hearing, such modification is disapproved". (Emphasis added.) Whether a debtor may attempt to avoid increased plan payments by completing payments after a motion to modify is filed, but before any hearing on that motion can be held, does *not* appear, however, to have been addressed by this, or any other, court.

Plan modification often occurs in the context of debtors who cannot afford to make the monthly payments under their confirmed plans. *E.g.*, *In re Taylor*, 215 B.R. at 883 (seeking to reduce monthly plan payment). Where a modification is sought because the debtor can make larger payments to creditors than those imposed by the plan, courts have still emphasized that a modification may not be filed *after* the debtor has completed plan payments. *E.g.*, *In re Sutton*, 303 B.R. at 515-16 (asserting "an absolute right to request modification of the plan between confirmation of the plan and completion of plan payments"); *In re Solis*, 172 B.R. at 532 ("A confirmed chapter 13 plan may be modified ... to increase or reduce payments after confirmation *but before completion of debtor's*

8

*payments*." (emphasis added)). One bankruptcy court in our circuit, encountering a creditor who sought plan modification *after* the debtor completed payments ahead of schedule, explained: "[Section] 1329(a) clearly requires that any request for a post-confirmation modification of a confirmed chapter 13 plan must be *presented* ... before the completion of payments under such plan". *In re Smith*, 237 B.R. 621, 625 n.7 (Bankr. E.D. Tex. 1999) (emphasis added and internal quotation marks omitted). That court concluded: "[W]ithout providing advance notice to any party, a Chapter 13 debtor may tender all the payments due and owing under a confirmed plan on an accelerated basis and thereby create an entitlement to discharge". *Id.* at 626.

This rationale does not, however, extend to a situation where, as here, the trustee files a modification motion *prior* to the debtor's tendering full payment. In this regard, for a *debtor's* filing a proposed modification under § 1329, at least one court has held it effective as of the date of filing. *See* **In re Taylor**, 215 B.R. at 884 (explaining "that the proposed modified plan becomes the controlling plan for debtor's performance upon filing"). The modified plan "remains the controlling document unless later disapproved after notice and a hearing". *Id.* (internal quotation marks omitted). The **Taylor** court noted it was *not* deciding whether this same approach would be followed "[w]here the trustee or an

9

unsecured creditor moves to modify a plan to increase the amount of plan payments". *Id*.

Here, Trustee filed a proposed modification prior to Debtors' attempt to pay the plan balance. Obviously Debtors' making their final payment did not *nunc pro tunc* make untimely that modification filing. Because the modification was timely filed, and would become effective after the notice period *unless* disapproved, it precluded Debtors from making their final payment under the earlier confirmed plan.

Rule 3015(g) requires "not less than 20 days notice by mail of the time fixed for filing objections" to a proposed modification. FED. R. BANKR. P. 3015(g). Because documents providing the hearing notice and number of days to file an objection to Trustee's modification were provided in the record on appeal, we do not know what time period the parties fixed for objections to the modification motion. Trustee, as appellant, had the burden of providing a complete record on appeal. FED. R. APP. P. 10(b). Although they made final-plan payment within 20 days of the modification motion, Debtors did not file an objection to the modification until almost six weeks after the motion was filed. Nevertheless, the parties agree Debtors timely objected to Trustee's proposed modification. (Along that line, at oral argument, Trustee's counsel stated that Debtors timely objected within 20 days to Trustee's modification. The bankruptcy court's

10

docket reflects, however, that the modification motion was filed on 23 March and no objection was made until 3 May.)

In sum, we cannot conclude from this record that Debtors' objection was untimely. In any event, as discussed below, instead of holding Trustee's modification motion untimely, the bankruptcy court should have considered it on its merits.

In concluding that Debtors were permitted to complete plan payments after Trustee had filed his proposed modification, but before a hearing on it was held, the bankruptcy court relied in part on a treatise which noted: "[T]he literal language of section 1329(a) would appear to permit a debtor to complete payments during the 20 days that a request to modify must be pending under Federal Rule of Bankruptcy Procedure 3015(g) and thereby deprive the court of the power to modify the plan". 8 COLLIER ON BANKRUPTCY ¶ 1329.08 (15th ed. 2004). Section 1329(a), when viewed alone, could be interpreted in this fashion. But, when § 1329 is read in its entirety, within the context of chapter 13, it is improbable this is the correct or intended result. Section 1329(a) provides a plan may be modified "upon request" and "before the completion of payments"; but, § 1329(b)(2) provides that the modified plan "*becomes the plan* unless, after notice and a hearing, such modification is disapproved". (Emphasis added.) Read together, both subsections show that, when a modification request is timely filed, the completion of the plan and eventual discharge of the

11

debtor is stayed until the bankruptcy court is allowed to consider the modification on its merits. A contrary result would encourage gamesmanship on behalf of debtors and prevent them from repaying creditors "to the extent of [their] capabilit[ies]". *In re Arnold*, 869 F.2d at 242 ("Certainly Congress did not intend for debtors who experience substantially improved financial conditions after confirmation to avoid paying more to their creditors.").[*] Therefore, rather than disapproving it as untimely, the bankruptcy court should have considered Trustee's proposed modification on its merits.

III.

For the foregoing reasons, the judgment is **VACATED** and this matter is **REMANDED** to district court for remand to bankruptcy court for further proceedings consistent with this opinion.

*VACATED AND REMANDED*

---

[*]Related to this, before refinancing their exempt homestead, Debtors did not — but should have — received permission from the bankruptcy court. *See, e.g.*, *In re Bergolla*, 232 B.R. at 516 n.1 (authorizing the debtors' sale of their exempt homestead). A debtor may sell or lease property of an estate, but only after "notice and a hearing". 11 U.S.C. § 363(b); *see* 11 U.S.C. § 1303 (explaining that a debtor has all rights and powers of a trustee under § 363). Although Debtors' homestead was exempt property and thus *not* part of the estate under 11 U.S.C. § 541, it is sufficiently analogous — and apparently required by bankruptcy judges in the Northern District of Texas — such that Debtors should have sought court approval before refinancing their home. Had they done so, this would have given Trustee an opportunity, before any refinancing occurred, to object to Debtors' avoiding making payments to their unsecured creditors.

12